399 P.2d 202

Benner J. CARLING, Plaintiff,

v.

INDUSTRIAL COMMISSION of Utah and Consolidated Western Steel Division United States Steel Corporation, Defendants.

No. 10177.

Supreme Court of Utah.

Feb. 19, 1965.

as a result of loud noise created while he was operating an "air-tamping gun" for the defendant, Consolidated Western Steel Company.

There is no dispute about the fact that Mr. Carling has substantial deficiency of hearing in both ears (his application claims 40 per cent in his left and 56 per cent in his right ear). But there is dispute in the evidence as to the extent of his hearing loss and, of more critical importance, whether it came about gradually as found by the Commission, or as the result of a single incident in connection with his work, as Mr. Carling claims.

Mulliner, Prince & Mangum, Robert M. Yeates, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., Parsons, Behle, Evans & Latimer, Salt Lake City, Glen J. Brown, Los Angeles, Cal., E. V. Boorman, Jr., Provo, for defendants.

CROCKETT, Justice.

Benner J. Carling seeks review and reversal of an order of the Industrial Commission denying him an award under the Workmen's Compensation Act for impairment of hearing he claims to have suffered

The Workmen's Compensation Act, Section 35–1–45, U.C.A.1953, provides for an award to an employee "* * * who is injured * * * by *accident* arising out of or in the course of his employment * * *." There is no further definition of the term "accident," but this court has held that for the purpose of the Act it should be given a broad meaning.[1] It connotes an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events.[2] We recognize the correctness of plaintiff's contention that even though there must be some such "accident" within the meaning of that statute,[3] this

1. See Graybar Electric Co. v. Ind. Comm., 73 Utah 568, 573, 276 P. 161.
2. See Andreason v. Ind. Comm., 98 Utah 551, 100 P.2d 202, 205; and Tavey v. Ind. Comm., 106 Utah 489, 150 P.2d 379, 381.
3. See Pintar v. Ind. Comm., 14 Utah 2d 276, 382 P.2d 414.

is not necessarily restricted to some single incident which happened suddenly at one particular time and does not preclude the possibility that due to exertion, stress or other repetitive cause, a climax might be reached in such manner as to properly fall within the definition of an accident as just stated above.[4] However, such an occurrence must be distinguished from gradually developing conditions which are classified as occupational diseases and which are not compensable except as provided in Chapter 2 of Title 35 (Sections 35–2–1, et seq.), U.C.A.1953.

The air gun referred to was used to pound against the sides of large pipes, four inches in diameter by 21 feet long, while sand was being poured into them from the top, in order to vibrate the pipes and compact the sand. This is done because when the pipes are filled it is easier to bend and shape them. The incident upon which Mr. Carling bases his claim for compensation is related by him to have occurred on August 31, 1960. He states that after he had been pounding the pipes with the air gun for about 20 to 30 minutes, he suddenly became aware that his perception of other noises around him became dulled, and that he reported this to his foreman. He did not leave the job but traded places with his coworker and went to the top to pour in the sand while the other man tamped the pipes with the air gun. It was not until considerable time later, after applicant was no longer working for defendant Consolidated Western Steel and had worked for another employer for several months, that he filed this application for compensation for loss of hearing.

Mr. Carling's testimony as to his abrupt loss of hearing is supported by some medical evidence that such could have been the effect. However, it is apparent that the Commission chose not to accept that evidence, but in making its findings of fact was persuaded by evidence to the contrary which showed: that Mr. Carling had a long prior history of deficient hearing; that as early as 14 years before the incident referred to, when he took a physical examination for employment in 1946, the doctor made note of a substantial loss of hearing, and he was rejected for employment, but was later hired. Another such examination in 1947 also noted his hearing deficiency. Other doctors who had examined him and his records stated they were of the opinion that there had been a gradual and continuous regression of his hearing, and that this was not the usual pattern of a hearing loss suffered in the

4. See Jones v. Calif. Packing Corp., 121 Utah 612, 616, 244 P.2d 640, 642, wherein we held that heart failure brought about by continued exertion could be found an "accident" within the meaning of the act; see Andreason v. Ind. Comm., supra note 2; and Purity Biscuit Co. v. Ind. Comm., 115 Utah 1, 201 P.2d 961 and cases therein cited.

manner he contends this loss occurred; also that the type of hearing loss he suffered could be due to a number of factors, including heredity. There was evidence that his mother had defective hearing. An acoustical engineer testified that noise from the air gun under the conditions shown was within the limits of tolerance of ordinary ears.

Upon the basis of the evidence we have summarized above, the Commission included these statements in its findings:

> The great weight of medical testimony quite clearly indicates that applicant had some hearing loss as early as 1945 and 1946 and 1947.
>
> *   *   *   *   *   *
>
> The medical evidence strongly suggests occupational disease due to long exposure to loud noise or heredity.
>
> *   *   *   *   *   *
>
> The medical reports heretofore mentioned and the opinions of specialists noted herein do not support a finding that the specific incident of August 31, 1960, caused the alleged loss of hearing.

■ The only thing which gives any plausibility to the plaintiff's attack upon the Commission's findings and order is that it also included therein the recital that "There is *no competent evidence in the record to support the single incident* as the cause of hearing loss." The fact that this latter statement was not exactly correct will not nullify the entire order.[5] A reversal because of an erroneous statement by the Commission would be justified only if it appeared that it was so mistaken in fact or law that in its absence there would be a reasonable likelihood of a different result.[6] That does not appear to be the case here.

■ Inasmuch as there is a reasonable basis in the evidence to support the Commission's conclusion that the plaintiff's loss of hearing did not result from a single incident, nor from an "accident" arising out of or in the course of his employment, its order cannot be said to be capricious or arbitrary.[7]

Affirmed. No costs awarded. (All emphasis added.)

HENRIOD, C. J., and McDONOUGH, WADE and CALLISTER, JJ., concur.

---

5. That judgment will be affirmed if sustainable upon the evidence and the law even though the court made statements inconsistent with the judgment, see Stevens and Wallis v. Golden Porphyry Mines Co., 81 Utah 414, 18 P.2d 903; and McCollum v. Clothier, 121 Utah 311, 241 P.2d 468.

6. Walker v. Peterson, 3 Utah 2d 54, 278 P.2d 291.

7. See Kent v. Ind. Comm., 89 Utah 381, 57 P.2d 724.