Harley R. BRUNDAGE, Plaintiff,

v.

IML FREIGHT, INC., Special Fund of Utah, and The Industrial Commission of Utah, Defendants.

No. 16972.

Supreme Court of Utah.

Dec. 18, 1980.

---

**6.** See Rule 56(1), U.R.E.

James R. Black of Black & Moore, Salt Lake City, for appellant.

Robert B. Hansen, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Robert W. Brandt, Salt Lake City, for respondent.

WILKINS, Justice:

This is an appeal by Plaintiff Harley R. Brundage from an order of the Industrial Commission which determined that he is suffering a 30 percent permanent partial bodily disability. Plaintiff maintained before the Commission and again on appeal that he is permanently and totally disabled.

Plaintiff has spent thirty years of his life as a truck driver, the most recent 17 of which he was employed by Defendant IML Freight, Inc. In August of 1975, plaintiff injured his back in an accident unrelated to his employment. In October of that year, he underwent surgery to remove intervertebral disc material at the L3–4 level in his back. He recovered sufficiently from the surgery to pass an Interstate Commerce Commission physical examination in October of 1976. He thereafter resumed his driving duties for IML.

On June 18, 1977, plaintiff again injured his back while unloading potatoes from his truck in Madison, Iowa. He completed his scheduled run to Chicago and was flown back to Salt Lake City from there the day following the accident. On August 1, 1977, he again underwent surgery on his back. Following the surgery, plaintiff's condition steadily improved until December of 1977. At that time he reinjured his back after catching his heel on a rug in his home. He has been unable to return to work since then.

On November 20, 1978, plaintiff filed an application for hearing with the Industrial Commission. An initial evidentiary hearing was held before an Industrial Commission administrative law judge on January 25, 1979. Both plaintiff and a clinical psychologist, who had examined and tested plaintiff, testified. Following that hearing the administrative law judge referred plaintiff to Richard Olsen, a rehabilitation counselor with the Division of Rehabilitation Services, for the purpose of evaluating plaintiff's potential for rehabilitation and placement in a new occupation.

A second hearing was held on January 14, 1980. At that hearing two physicians who had examined plaintiff testified as to his physical condition and impairments. Mr. Olsen also testified as to his evaluation of plaintiff's prospects for rehabilitation and re-employment. Thereafter the administrative law judge entered his findings of fact, conclusions of law and order finding plaintiff 30 percent permanently partially disabled—15 percent of that disability attributable to nonindustrial causes and 15 percent to industrial causes—and ordered payment of certain benefits, but specifically found that plaintiff was not permanently and totally disabled.

On motion for review filed by plaintiff, the entire Commission upheld the administrative law judge. It did so with one Commissioner voting to uphold the order of the

administrative law judge, one Commissioner voting to reverse it and one Commissioner not participating.

■ As this Court recently stated in the case of *Clark v. Interstate Homes, Inc.*:[1]

It is fundamental that a determination as to permanent disability is a factual question for the Commission to resolve, and that determination will not be set aside by this Court unless there is no substantial evidence in the record to support it, *Evans v. Industrial Commission,* 28 Utah 2d 324, 502 P.2d 118 (1972); §§ 35–1–84 and 85, U.C.A. (1953), as amended.[2]

In his treatise *The Law of Workmen's Compensation*, Professor Arthur Larson states:

"Total disability" in compensation law is not to be interpreted literally as utter and abject helplessness. . . . The task is to phrase a rule delimiting the amount and character of work a [person] can be able to do without forfeiting his totally disabled status.[3]

Consonant with the view expressed by Larson, this Court has adopted the following definition of total disability:

This Court has recognized the principle that a workman may be found totally disabled if by reason of the disability resulting from his injury he cannot perform work of the general character he was performing when injured, or any other work which a [person] of his capabilities may be able to do or to learn to do. . . .[4]

A review of the testimony heard by the administrative law judge reveals the following with respect to plaintiff's physical and occupational limitations. Dr. Wayne Hebertson, a neurologist, testified that plaintiff is unable to sit or stand for any prolonged period of time, is restricted in stooping or bending, should lift no more than 15 pounds and is restricted in walking and twisting. Doctor Hebertson testified that all of these restrictions are permanent and that because of the sitting and standing restrictions on plaintiff, it was difficult for the doctor to perceive that plaintiff might be able to engage even in sedentary vocations. Richard Olsen, the rehabilitation counselor, testified that based on plaintiff's limitations, there is no occupation presently available to plaintiff.

■ A review of letters from various consulting physicians also found in the record indicates that they are unanimous in believing that plaintiff cannot return to being a truck driver. Furthermore, some of these physicians also indicated that they considered plaintiff unemployable. In the face of such evidence, none of which was contradicted, it then became incumbent upon the defendants to show that plaintiff "is able to secure employment of a special nature not generally available or that he is able to perform the duties of such employment."[5] Defendants adduced no such evidence. Therefore there is no evidence in the record to support the finding of the administrative law judge that there was such special employment available to plaintiff. Here, as in the case of *Buxton v. Industrial Commission,*[6] "the Commission could not have formed a bona fide opinion that plaintiff was not then incapable of re-entering the labor market by reason of physical disabilities . . ."[7]

The order of the Industrial Commission is reversed. Section 35–1–67, Utah Code Annotated, 1953, as amended, prescribes the procedure which is to be followed in cases of permanent disability. That section requires that:

1. Utah, 604 P.2d 937 (1979).

2. Id. at 938.

3. 2 Larson, *The Law of Workmen's Compensation*, § 57.51 at 10–107.

4. *United Park City Mines Co. v. Prescott*, 15 Utah 2d 410, 412, 393 P.2d 800, 801–802 (1964), cited in *Clark v. Interstate Homes, Inc.*, supra, at 938. See, also, *Caillet v. Industrial Commission*, 90 Utah 8, 58 P.2d 760 (1936).

5. *Caillet v. Industrial Commission*, supra, 90 Utah at 15, 58 P.2d at 763.

6. Utah, 587 P.2d 121 (1978).

7. Id. at 123–124.

... a finding by the commission of permanent total disability shall in all cases be tentative and not final until such time as the following proceedings have been had: Where the employee has tentatively been found to be permanently and totally disabled it shall be mandatory that the industrial commission of Utah refer such employee to the division of vocational rehabilitation under the state board of education for rehabilitation training ... If and when the division of vocational rehabilitation under the state board of education certifies to the industrial commission of Utah and in writing that such employee has fully co-operated with the division of vocational rehabilitation in its efforts to rehabilitate him, and in the opinion of the division the employee may not be rehabilitated, then the commission shall order that there be paid to such employee weekly benefits ...

The record discloses that plaintiff was referred to the Division of Rehabilitation Services for a determination of whether he could be rehabilitated. Mr. Olsen testified that plaintiff could not be rehabilitated but the record does not contain a written certification of that fact as required by Section 35–1–67. Further, the question of allocation between defendant IML and the "special fund" of any additional benefits paid to plaintiff should be handled according to the dictates of Section 35–1–69.

This matter is accordingly remanded to the Commission for further proceedings consistent with this opinion and the requirements of the applicable statutes. Our disposition of this matter renders unnecessary discussion of the other points raised by plaintiff on appeal. No costs awarded.

CROCKETT, C. J., STEWART, J., and KENNETH RIGTRUP, District Judge, concur.

MAUGHAN, J., does not participate herein.

HALL, Justice (concurring specially):

I agree that it *tentatively* appears that plaintiff may be permanently and totally disabled. However, pursuant to U.C.A., 1953, 35–1–67, the *final* determination thereof is not to be made until such time as plaintiff has fully cooperated with the division of vocational rehabilitation in its efforts to rehabilitate him. Of course, benefits may only be paid at such time as, in the opinion of the division, the employee cannot be rehabilitated.