**UNDERWATER CONSTRUCTION, INC., and Industrial Indemnity Company of Alaska, Appellants/Cross–Appellees,**

v.

**William M. SHIRLEY, Appellee/Cross–Appellant.**

Nos. S–5247, S–5248.

Supreme Court of Alaska.

Nov. 4, 1994.

Mark L. Figura, Rose & Figura, Anchorage, for appellants/cross-appellees.

Chancy Croft, Chancy Croft Law Office, Anchorage, for appellee/cross-appellant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

Underwater Construction, Inc. appeals an award of attorney's fees pursuant to section 145(a) of the Alaska Workers' Compensation Act (Act), AS 23.30.005–.270, claiming that the award was improper since it never "controverted" payment of compensation. We affirm the award with slight modification.

William W. Shirley cross-appeals the denial of his request for a determination that he is entitled to an order awarding him permanent partial disability payments pursuant to section 110(c) of the Act. We reverse the denial.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

William W. Shirley was severely injured while working for Underwater Construction, Inc. (Underwater Construction) on August 4, 1989. On August 23, 1989, Underwater Construction's insurance carrier, Industrial Indemnity Company of Alaska (collectively, Industrial Indemnity), began paying Shirley temporary total disability (TTD) payments of

$449.37 per week. Although Shirley received extensive medical treatment, specialists concluded that he would not be competitively employed then or in the future.

On August 21, 1990, Dr. Shawn Hadley, a rehabilitative specialist, performed a permanent partial impairment (PPI) rating and concluded that Shirley had an impairment rating of 54% of the whole man. Industrial Indemnity indicated that the rating "may be premature," and sought to clarify impairment status through consultation with another head injury expert, Katherine Mateer, Ph.D. Industrial Indemnity continued to pay Shirley $449.37 per week in TTD benefits.

Shirley contacted an attorney and filed an application for permanent total disability (PTD) benefits. Industrial Indemnity filed an answer on a form provided by the Alaska Workers' Compensation Board (Board) in which it disputed Shirley's PTD claim: "Carrier is awaiting clarification from record review to determine P & T status. Until such time TTD is on-going." Industrial Indemnity also "reserve[d] the right to raise further defenses after discovery." In response to Shirley's claim for attorney's fees, Industrial Indemnity stated: "No benefits have been controverted. All benefits due and owing under the Alaska Workers' Compensation Act have been accepted and paid." In support of this, Industrial Indemnity noted that since the TTD and PTD rates are the same, its decision had no effect on the amount of Shirley's compensation benefits.

In January 1991 Industrial Indemnity received a report from Dr. Mateer which stated that "Mr. Shirley is permanently and totally disabled as a result of the August 4, 1989 injury." On this basis, Industrial Indemnity converted Shirley's status from TTD to PTD, effective January 24, 1991.

In March 1991 the Board held a hearing on Shirley's claim. The Board found that Shirley had been permanently totally disabled after August 21, 1990. Based on this finding, the Board held that Industrial Indemnity had "controverted in fact Employee's entitlement to PTD benefits." Accordingly, the Board required Industrial Indemnity to pay statutory minimum attorney's fees on all disability payments made after August 21. The Board

also denied Shirley's request for "an award of PTD benefits until further board order," noting that Industrial Indemnity would be warranted in changing Shirley's status if his condition were to improve in the future.

Industrial Indemnity appealed the attorney's fee ruling to the superior court, Alaska R.App.P. 601; AS 22.10.020, arguing that it had not "controverted" the payment of disability benefits. The superior court affirmed the Board's order. Industrial Indemnity appeals that ruling. Shirley cross-appeals, claiming that the Board erred in denying his claim "for an award of permanent total disability benefits." Alaska R.App.P. 202(a); AS 22.05.010(c).

## II. DISCUSSION

### A. AWARD OF ATTORNEY'S FEES UNDER AS 23.30.145(a).

■ The central question before this court is whether the Board had the authority under section 145(a) of the Act to award statutory attorney's fees. Because this determination requires statutory interpretation involving no administrative expertise, the substitution-of-judgment standard is appropriate. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987). We give no deference to the intermediate appellate decisions of the superior court. *Id.*

■ Alaska Statute 23.30.145(a) provides in part:

When the board advises that a claim has been controverted, in whole or in part, the board may direct that the fees for legal services be paid by the employer or carrier in addition to compensation awarded; the fees may be allowed only on the amount of compensation controverted and awarded. . . .

The parties dispute the effect of Industrial Indemnity's delay in changing Shirley's status from TTD to PTD. Industrial Indemnity argues that it never controverted any amount of compensation owed to Shirley and therefore the Board did not have authority to grant attorney's fees. It notes that it has paid Shirley $449.37 in weekly TTD benefits

since his injury—the same amount for which he would be eligible if granted PTD status.

Shirley responds that Industrial Indemnity controverted his claim by "never unqualifiedly accept[ing] Shirley's claim for permanent total disability compensation." Because Industrial Indemnity satisfied the controversion requirement, the award of attorney's fees was appropriate.

We agree. Shirley's physician, Dr. Hadley, indicated in her July and August 1990 reports that Shirley was medically stable and that he would not be able to pursue gainful employment. Given these conclusions, Shirley was entitled to have his status changed at that time from TTD to PTD.[1] Accordingly, Industrial Indemnity's refusal to change Shirley's status constituted a controversion of Shirley's claim "in whole or in part" under AS 23.30.145(a).

Nonetheless, section 145(a) limits the Board's authority to award attorney's fees to "the amount of compensation controverted and awarded." AS 23.130.145(a); *see Bignell v. Wise Mechanical Contractors,* 651 P.2d 1163, 1169 (Alaska 1982) ("The statute unambiguously restricts the award of attorney's fees to *amounts* which are controverted."); *J.B. Warrack Co. v. Roan,* 418 P.2d 986, 990 (Alaska 1966) (holding that where although carrier did not controvert *amount* of employee's claim, no attorney's fees could be awarded). Industrial Indemnity argues that because the payment amount under TTD was exactly the same as it would have been under PTD, no "amount of compensation" was controverted.

We disagree. Industrial Indemnity controverted the permanent status of Shirley's disability, thus affecting the total amount he could collect during his lifetime. As the superior court noted, "[t]he distinction between TTD and PTD can be very important to an employee since TTD payments end with

medical stability while PTD benefits do not." Shirley claimed $449.37 per week PTD. Regardless of TTD benefits being paid, Industrial Indemnity's action paid zero dollars PTD. Furthermore, Industrial Indemnity's suggestion that a status change would have no effect on the amount that Shirley receives is somewhat disingenuous. If indeed there had been no "amount of compensation" at stake, there would not have been any reason for Industrial Indemnity to controvert Shirley's claim. By controverting Shirley's entitlement to PTD benefits, Industrial Indemnity retained the option to claim that its liability ended as of the point at which Shirley achieved medical stability. Amounts payable—and not voluntarily paid—after that point were thus controverted.

■■■■ The policies underlying the attorney's fees statute further support our conclusion. Alaska Statute 23.30.145(a) provides for attorney's fees in order to ensure that injured workers are able to obtain effective representation. *Wien Air Alaska v. Arant,* 592 P.2d 352, 365–66 (Alaska 1979), *overruled on other grounds, Fairbanks N. Star Sch. Dist. v. Crider,* 736 P.2d 770 (Alaska 1989). Where an employer resists payment of benefits, the injured worker must retain an attorney to protect his interests. "The employer is required to pay the attorneys' fees relating to the unsuccessfully controverted portion of the claim because he created the employee's need for legal assistance." *Haile v. Pan American World Airways, Inc.,* 505 P.2d 838, 842 (Alaska 1973) (Rabinowitz, J., dissenting in part, concurring in part). In this case, Industrial Indemnity's dispute regarding the classification of Shirley's benefits required him to obtain representation. As the Board noted, Industrial Indemnity "should have changed [Shirley's] status to PTD *and then* pursued medical confirmation of [Shirley's] condition."

---

1. Dr. Hadley did not conclude explicitly that Shirley was entitled to PTD (permanent *total* disability) status. Following the August 21, 1990 visit, Dr. Hadley gave Shirley a PPI (permanent *partial* impairment) rating of 54% of the whole man. Nevertheless, Dr. Hadley's conclusion that Shirley's condition was stable, combined with her previous statements that Shirley would never work again, support the Board's conclusion that

Shirley was entitled to PTD status as of August 21, 1990. AS 23.30.180; *see J.B. Warrack Co. v. Roan,* 418 P.2d 986, 987–88 (Alaska 1966) (For workers' compensation purposes total disability means the inability "to perform services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exit.").

▇ Based on the foregoing, we conclude that the Board was correct in awarding attorney's fees to Shirley. However, we disagree with the Board's specific formulation of the fee award. The Board awarded "statutory minimum attorney's fees on all compensation benefits paid after August 21, 1990, the date of Dr. Hadley's final report." However, this award improperly includes Industrial Indemnity's payments made prior to the Board's decision. In *Bignell,* we affirmed the Board's decision that attorney's fees could not attach to the employer's voluntary payment of $6000, since that amount was not controverted. 651 P.2d at 1169. In this case, attorney's fees cannot attach to the payments "tendered" by Industrial Indemnity until the Board's award, since this amount was not controverted.[2] Accordingly, we modify the Board's award to apply to all compensation benefits paid after the date of the Board award. If the fees awarded under section 145(a) are disproportionately high, that fact should be taken into account by the superior court. *Wien Air Alaska,* 592 P.2d at 356.

### B. DENIAL OF SHIRLEY'S REQUEST FOR AN AWARD OF PTD BENEFITS UNTIL FURTHER BOARD NOTICE

▇ Shirley argues on cross-appeal that the Board erred by not explicitly granting him an award of PTD benefits. Shirley apparently desires an order from the Board that Industrial Indemnity must pay PTD benefits until further order of the Board. Shirley claims that the issue was ripe for determination, and AS 23.30.110(c) required the Board to make a determination and award of PTD compensation.

In response, Industrial Indemnity argues that this issue is moot because the Board expressly found that Shirley was entitled to PTD benefits after August 21, 1991. In the alternative, it argues that the statute does not require an employer to obtain a Board order prior to termination of disability benefits. It concludes that the Board properly denied Shirley's request for an order directing payment of PTD benefits until further Board order.

We disagree with Industrial Indemnity's argument that this issue is moot. The Board did not take "the action requested by Mr. Shirley," or expressly award Shirley PTD benefits. At the very most, the Board concluded that Shirley had been entitled to PTD benefits after August 21, 1990, and that Industrial Indemnity's refusal to change Shirley's status constituted a controversion. Nevertheless, this conclusion was drawn in the context of the Board's decision regarding attorney's fees. Regarding Shirley's request for an award of PTD benefits until further Board order, the Board denied and dismissed the request, stating that the "[e]mployee has not pointed to any statute which would give us authority to make the order he requests."

▇ We therefore turn to the question of whether the Board was correct in concluding that it did not have the authority to grant Shirley's request. This is a question of law, requiring statutory interpretation and involving no administrative expertise. Accordingly, we review the decision under the substitution-of-judgment standard. *Tesoro,* 746 P.2d at 903.

The Board clearly did not believe that an express award of benefits would have made any difference to Shirley. The Board stated:

> We believe it is clear (and always has been) that the employer and insurer have the authority to change an injured worker's pay status when the evidence in a given claim warrants a change.... [T]here is nothing in the [Act] to prevent or preclude [such a change].

This statement is most likely based on AS 23.30.180, which provides for compensation for permanent total disability "during the

---

2. This conclusion is also supported by our decision in *Alaska International Constructors v. Kinter,* 755 P.2d 1103 (Alaska 1988). In *Kinter,* the insurance carrier also claimed that no amount of compensation was controverted since it had paid TTD benefits which were the same weekly amounts as the PTD benefits to which Kinter was entitled. *Id.* at 1106. Despite this payment, however, the carrier's answer to Kinter's claim for PTD benefits indicated that it was denying *all* liability. Since the carrier essentially had made the TTD payments "under protest," we concluded that it had controverted all amounts paid after the answer was filed. *Id.* at 1106–07, 1107 n. 11.

continuance of the total disability." Because Shirley would not be entitled to continuing payments if his condition were to improve unexpectedly, the Board concluded that the employer or insurer could unilaterally cease payments upon the improvement.

▇▇ Our review of the statutory framework indicates that this conclusion was incorrect. The Board erred in concluding that an employer or insurer has the unilateral authority to modify or terminate an employee's benefits, or to change an injured worker's status. Further, the Board erred in refusing to make an express award of PTD benefits to Shirley. Contrary to the Board's view, such an award was important to Shirley because it would have made it more difficult for Industrial Indemnity to change his status at a later time.

▇▇ Alaska Statutes 23.30.150–.170, entitled "Payment of Compensation," outline the manner by which compensation payments are to be made. Compensation is payable "without an award, except where liability to pay compensation is controverted by the employer." AS 23.30.155(a). If payment of compensation is controverted, the employee is entitled to a hearing[3] and a compensation order "rejecting the claim or making the award."[4] AS 23.30.110(e). If an award is made, then compensation is "payable under the terms of an award." AS 23.30.155(f).

▇▇ If an employer wishes to modify or terminate payments, it is required to "notify the Board and the employee of the nature and substance" of the change within twenty-eight days.[5] 8 Alaska Administrative Code (AAC) 45.136 (1991). More importantly, an employer seeking to modify or terminate payments made under a Board order must first seek the approval of the Board. The statute provides: "Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions, ... the board may ... review a compensation case under the procedure prescribed in respect of claims in AS 23.30.110." AS 23.30.130(a). The applicable regulation further clarifies the requirements which must be met before an award can be modified on the basis of a change in conditions: "A petition for a rehearing or modification based upon change of conditions must set out specifically and in detail the history of the claim from the date of the injury to the date of filing of the petition and the nature of the change of conditions." 8 AAC 45.150(c).

The above statutory and regulatory provisions indicate that an employer or insurer does *not* "have the authority to change an injured worker's pay status when the evidence in a given claim warrants a change." If payments are being made pursuant to a Board order, the employer or insurer must petition the Board for rehearing or modification of its order on the basis of "a change in conditions." AS 23.30.130(a). This conclusion explains why Shirley requested an express award of PTD benefits, and why Industrial Indemnity opposed such an award. Such an award would make it more difficult for Industrial Indemnity to modify or terminate the payment of benefits at a later date.

### III. *CONCLUSION*

We AFFIRM the Board's conclusion that Industrial Indemnity "controverted" Shir-

---

**3.** AS 23.30.100–.145, entitled "Compensation Proceedings," outline procedures to be followed when a dispute arises regarding an injured worker's compensation. If a hearing is requested pursuant to AS 23.30.110(c), the holding of a hearing is mandatory, not discretionary. *Summers v. Korobkin Constr.*, 814 P.2d 1369, 1371 (Alaska 1991).

**4.** The Board is required to "file its decision" within 30 days after the agency record closes. AS 23.30.110(c). The decision is referred to in the statute as a "compensation order," reviewable in a judicial proceeding, AS 23.30.125, and modifiable by the Board on its own initiative or the application of a party. AS 23.30.130. If a claim is controverted in whole or in part, the Board may allow attorney's fees "in addition to

compensation awarded," but "only on the amount of compensation ... awarded." AS 23.30.145(a).

**5.** The statute also provides the Board with the authority to intervene if an employer decides to modify or terminate benefits:

The Board may upon its own initiative at any time in a case in which payments are being made with or without an award, where right to compensation is controverted, or where payments of compensation have been [modified or terminated] ... hold the hearings, and take the further action which it considers will properly protect the rights of all parties.
AS 23.30.155(h).

ley's PTD claim for purposes of AS 23.30.145(a), however, we MODIFY the Board's award of attorney's fees. We REVERSE the Board's decision regarding Shirley's entitlement to PTD benefits, and we REMAND with directions to enter an order consistent with this opinion.

RABINOWITZ, Justice, dissenting in part.

I dissent from the court's holding that the Board, in the factual context of this case, has authority under AS 23.30.145(a), to award attorney's fees to Shirley.

In my view Section 145(a) does not furnish authority for the Board to award attorney's fees since Industrial Indemnity did not controvert any amounts of compensation. Under Section 145(a) attorney's fees "may be allowed only on the amount of compensation controverted." There is simply no record evidence that Industrial Indemnity was not prepared to pay any lifetime compensation benefits to which Shirley was entitled under the Act. What took place here was a temporary disagreement concerning the point at which the medical evidence justified classifying Shirley's disability as permanent rather than temporary.

Under the court's approach a difference over a few months regarding a change in Shirley's status from TTD to PTD translates into an award of attorney's fees based on a lifetime of compensation payments. This strikes me as basically unfair.[1]

The court advances three grounds in support of its holding that the Board can resort to Section 145(a) in awarding attorney's fees to Shirley. First, the court observes that Industrial Indemnity would not have bothered to controvert Shirley's claim for PTD if there wasn't an "amount of compensation" at stake. This rationale overlooks an employer's interest in accurate information as well as the possibility of an employer's reasonable belief in the claimant's recovery. Second, the court notes that even if Industrial Indemnity did not dispute the total amount it owed, it disputed the PTD amount it owed. This reasoning impliedly overrules *Bignell v. Wise Mechanical Contractors*, 651 P.2d 1163 (Alaska 1982). In *Bignell*, Wise classified its compensation payments incorrectly, just as Industrial Indemnity did in this case. Wise termed its payments PPD, and we held that Wise should have continued to pay TTD. Nonetheless, the $6,000 in mislabeled payments was subtracted from the "amount controverted" figure. In my view, the *Bignell* case and the instant case are indistinguishable. Lastly, the court notes that the State's controversion meant a dispute over "the total amount ... [Shirley] could collect during his lifetime." As noted above, in my view this is not an accurate reading of the record.

Given the inapplicability of Section 145(a), I would require the parties to file supplemental briefs as to whether Section 145(b) authorizes the Board to award attorney's fees to Shirley, or whether, due to the inapplicability of Sections 145(a) and (b),[2] Section 145(c) authorizes this court to consider uncompensated attorney's fees incurred before the Board, as well as attorney's fees for proceedings before this court, in making an award for attorney's fees.

---

1. The court observes that "[i]f the fees awarded under Section 145(a) are disproportionately high, that fact should be taken into account by the superior court." Assuming 145(a) allows for deviation from its fee schedule the "disproportionately high" standard strikes me as illusory.

2. Alaska Statute 23.30.145(b) provides:

If an employer fails to file timely notice of controversy or fails to pay compensation or medical and related benefits within 15 days after it becomes due or otherwise resists the payment of compensation or medical and related benefits and if the claimant has employed an attorney in the successful prosecution of the claim, the board shall make an award to reimburse the claimant for the costs in the proceedings, including a reasonable attorney fee. The award is in addition to the compensation or medical and related benefits ordered.

AS 23.30.145(c) provides:

If proceedings are had for review of a compensation or medical and related benefits order before a court, the court may allow or increase an attorney's fees. The fees are in addition to compensation or medical and related benefits ordered and shall be paid as the court may direct.